UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHERYL ARMBRUSTER | ) | CASE NO. 1:13-cv-2626 |
| | ) | |
| on behalf of herself | ) | JUDGE BOYKO |
| and all others similarly situated, | ) | |
| | ) | MAGISTRATE JUDGE VECCHIARELLI |
| Plaintiff, | ) | |
| | ) | **JOINT MOTION FOR** |
| vs. | ) | **PRELIMINARY APPROVAL OF** |
| | ) | **CLASS ACTION SETTLEMENT** |
| CITY OF CLEVELAND | ) | **AGREEMENT** |
| | ) | |
| Defendant. | ) | |

I.    **INTRODUCTION**

Plaintiff Cheryl Armbruster ("Representative Plaintiff," "Class Representative," or "Plaintiff"), on behalf of herself and the members of proposed settlement class ("Class Members"), and the City of Cleveland ("Defendant"), respectfully move the Court to preliminarily approve the Class Action Settlement Agreement ("Settlement Agreement" or "Settlement") between Plaintiff and Defendant pursuant to Fed. R. Civ. P. 23(e).

In support of this motion, Representative Plaintiff and Defendant submit the Settlement Agreement and its five attachments (*see* Exhibit 1), which consist of the following documents and proposed orders:

Exhibit A:    List of Plaintiffs-Class Members

Exhibit B:    Settlement and Release Agreement between
Defendant and Representative Plaintiff

Exhibit C:    Preliminary Order Approving Settlement and Notice

Exhibit D:    Class Notice

Exhibit E:    Final Order and Judgment Entry

1

Representative Plaintiff and Defendant request that the Court grant preliminary approval of the Settlement, designate Representative Plaintiff as Class Representative, preliminarily approve Class Representative's request for a Service Award, designate Plaintiffs' counsel as Class Counsel, preliminarily approve Class Counsel's request for attorneys' fees, and direct distribution of notice to the Class by entering the proposed Preliminary Order attached to the Settlement Agreement as Exhibit C.  Following the Fairness Hearing, Representative Plaintiff and Defendant will request that the Court grant final approval of the Settlement by entering the proposed Final Order and Judgment Entry attached to the Settlement Agreement as Exhibit E.

The following schedule sets forth a proposed sequence for the Settlement:

- Five (5) days after Preliminary Approval: Defendant will provide Plaintiffs' Counsel and the Settlement Administrator a spreadsheet containing the names and last known addresses of the Class Members. Defendant will also provide Social Security Numbers of the Class Members to the Settlement Administrator. Fourteen (14) days after Preliminary Approval: Mailing of Class Notice

- Thirty (30) days after mailing of Class Notice: Last day for Class Members to "opt-out" of the Settlement, submit written objections to the Settlement, and elect to receive their settlement payment for overtime as a cash payment (for current employees who currently receive compensatory time off in lieu of overtime compensation)

- Forty Five (45) days after mailing of Class Notice: Last day for filing and serving of papers in support of final Settlement approval

- Forty Five (45) days after mailing of Class Notice: The Settlement Administrator will file a Declaration verifying that the Class Notice was distributed, and the Parties will submit the proposed Estimated Schedule of Individual Payments and an updated version of the proposed Final Order and Judgment Entry

- Sixty (60) days after mailing of Class Notice **[DATE TO BE SET BY COURT]**: Final Settlement approval hearing at **[TIME TO BE SET BY COURT]**

- Thirty One (31) days after the Court's Final Order and Judgment Entry: the Effective Date

- December 15, 2014: Three (3) days after the Effective Date or December 15, 2014, whichever is later: Defendant shall issue and mail to the Settlement Administrator checks payable to all Class Members who are entitled to receive a

2

monetary payment in the amount the first installment payment. On this date, Defendant shall also deposit with the Settlement Administrator the amount of the first installment payment of the Service Award to Representative Plaintiff, and the attorneys' fees and reimbursement of litigation expenses to Plaintiffs' Counsel. Within two days of receiving the checks or deposited amounts from Defendant, the Settlement Administrator shall distribute the checks to Class Members and issue and distribute checks to Representative Plaintiff and Plaintiff's counsel.

Also, no later than (3) days after the Effective Date or December 15, 2014, whichever is later: Defendant shall deposit the compensatory time off portion of the first installment directly into the compensatory time banks of Class Members who are entitled to receive their portion of the Settlement Payment in the form of compensatory time off. The value of the monetary portion and the compensatory time portion of the first installment payment together equals one-half of the Settlement Payment.

- February 1, 2015: No later than February 1, 2015, Defendant shall issue and mail to the Settlement Administrator checks payable to all Class Members who are entitled to receive a monetary payment in the amount of the second installment payment. On this date, Defendant shall also deposit with the Settlement Administrator the amount of the second installment payment of the Service Award to Representative Plaintiff, and the attorneys' fees and reimbursement of litigation expenses to Plaintiffs' Counsel. Within two days of receiving the checks or deposited amounts from Defendant, the Settlement Administrator shall distribute the checks to Class Members and issue and distribute checks to Representative Plaintiff and Plaintiff's counsel.

Also no later than February 1, 2015, Defendant shall deposit the compensatory time off portion of the second installment directly into the compensatory time banks of Class Members who are entitled to receive their portion of the Settlement Payment in the form of compensatory time off. The value of the cash portion and the compensatory time portion of the second installment payment together equals one-half of the Settlement Payment.

As explained below, the Settlement Agreement was reached during arms-length negotiations between the Parties, which were conducted by experienced counsel following extensive investigation and based on the mutual recognition of the strengths and weaknesses of each other's positions, risks, and uncertainties of litigation.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   The Action

On November 26, 2013, Representative Plaintiff Cheryl Armbruster filed this Action as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, as well as a "class action" pursuant to Fed. R. Civ. P. 23 under the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), O.R.C. § 4111.03.

The Action contests Defendant's practice and policy of rounding the starting and stopping times of its non-exempt employees, including Plaintiff and other similarly-situated employees, in violation of the FLSA the OMFWSA (the "Litigation").

Plaintiff and other similarly-situated employees were paid according to Defendant's Time and Attendance/Kronos Guidelines policy. Plaintiffs claimed that the policy was unlawful under 29 C.F.R. § 785.48 because it did not round employees' time up and down to the nearest time increment, but provided that the starting and stopping times of Plaintiff and similarly-situated employees were always rounded against them. Defendant produced documents to Plaintiff showing that Defendant maintained substantially the same policy since 1991.

On January 21, 2014, Defendant filed an answer to the Complaint disputing the material allegations both as to fact and law, denying any liability to Plaintiff or any Class Members as defined in the Settlement Agreement, and asserting several affirmative defenses.

On March 3, 2014, Defendant modified its timekeeping practices and eliminated the Time and Attendance/Kronos Guidelines policy.  On this date, Defendant issued a memorandum to all Union Officials regarding the change and explaining that all hourly employees will be paid according to their actual time clocked without any rounding rules.

B.    **Negotiation of The Settlement**

Between January and April 2014 the Parties engaged in informal yet comprehensive discovery regarding Plaintiffs' claims and Defendant's defenses to such claims.  This included a complete analysis of each Class Member's overtime damages resulting from Defendant's Time

4

and Attendance/Kronos Guidelines policy during the Calculation Period, each version of the policy going back to 1991, and various agreements between Defendant and Kronos Incorporated. In addition, Plaintiffs' Counsel engaged in an independent investigation of the facts, obtained investigation notes from Representative Plaintiff and numerous other employees who are members of the proposed settlement class, gathered a number of declarations from employees in the proposed settlement class, and retrieved email communications that supported Plaintiffs' claims.

On April 30, 2014, and May 6, 2014, the Parties attempted to resolve the claims through a mediation with Magistrate Judge Vecchiarelli.  The Parties did not reach a settlement at the mediation conferences with the Magistrate Judge.  The Parties continued their settlement discussions and ultimately reached an agreement on May 21, 2014 to settle the Action on the terms set forth in the Settlement Agreement.

C.    **The Settlement Terms**

The terms of the Settlement Agreement include: the total Settlement Payment to be made by Defendant, the Effective Date of the Settlement, the calculation of Individual Payments to eligible recipients, the process for distributing Individual Payments to recipients, the proposed Service Award to Representative Plaintiff in recognition of her service in this Action and the providing of a general release, the Released Period, and the proposed distribution of reasonable attorneys' fees and expense reimbursements to Plaintiffs' Counsel.

The persons eligible for Individual Payments consist of Representative Plaintiff and members of the proposed settlement class.  The definition of the settlement class encompasses approximately 3,746 current and former employees who were paid according to the City of Cleveland's Time and Attendance/Kronos Guidelines policy and were denied overtime pay due to this policy between January 1, 2011 and the present.

5

The Class Members will release any and all federal and state wage-and-hour claims, rights, demands, liabilities and causes of action asserted in Plaintiff's Complaint, filed on November 26, 2013, including but not limited to claims for unpaid wages, unpaid overtime compensation, liquidated damages, interest, attorneys' fees, and expenses, pursuant to the Fair Labor Standards Act and the Ohio Minimum Fair Wage Standards Act, for the Released Period. In addition, Class Members will release any and all statutory and common law claims, rights, demands, liabilities and causes of action based on Defendant's Time and Attendance/Kronos Guidelines policy in all weeks worked during the Released Period. The "Released Period" for Plaintiff and the Class shall mean the period between January 1, 2011 and the date the District Court enters final approval.

The Individual Payments for which they are eligible will be calculated proportionally on each Class Member's overtime damages resulting from Defendant's Time and Attendance/Kronos Guidelines policy during the Calculation Period. The Calculation Period for Representative Plaintiff and the Class shall mean the period between January 1, 2011 and March 3, 2014, the date on which the City of Cleveland eliminated its Time and Attendance/Kronos Guidelines policy.

## III.   THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

The proposed class settlement is subject to approval by the Court pursuant to Fed. R. Civ. P. 23(e). As shown below, the Court's preliminary approval is warranted.

### A.   Preliminary Approval of the Settlement Under Rule 23(b) Is Warranted

#### 1.   Certification of the Settlement Class Is Appropriate

A proposed settlement class must satisfy the requirements of Rule 23. *UAW v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007) (citing *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997)). The proposed settlement Class satisfies those requirements.

6

The proposed settlement class meets Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation.  *See Senter v. General Motors Corp.*, 532 F.2d 511 (6th Cir.), *cert. denied*, 429 U.S. 870 (1976); *UAW v. General Motors Corp.,* 497 F.3d at 626.  The Class, consisting of approximately 3,746 members, is "so numerous that joinder of all members is impracticable."  Common issues of law or fact are presented by the Class's claims under the OMFWSA—whether Defendant's Time and Attendance/Kronos Guidelines policy violated the FLSA and OMFWSA.  Representative Plaintiff Armbruster is a member of the Class, and her claim for overtime compensation is typical of other Class Members' claims.  Armbruster is an adequate representative of the Class, in that she has common interests with other class members and she has vigorously prosecuted the interests of the class through qualified counsel.  *Rutherford v. City of Cleveland*, 137 F.3d 905 (6th Cir. 1998).

The Class further satisfies Rule 23(b)(3)'s requirements of predominance and superiority. *Senter*, 532 F.2d at 522; *UAW v. General Motors Corp.,* 497 F.3d at 626.  The unpaid overtime issues presented under the OMFWSA predominate over any individual questions.  Class-wide resolution of this controversy is superior to the alternative of litigating 3,746 individual suits. *General Tel. Co. v. Falcon*, 457 U.S. 147, 159 (1982) (class certification advances "the efficiency and economy of litigation which is a principal purpose of the procedure"); *Day v. NLO*, 851 F. Supp. 869, 883 (S.D. Ohio 1994) (of equal importance "are considerations of the avoidance of the inequality resulting from piecemeal litigation as well as a concern to provide access to the courts for litigants with limited resources and common claims").

## 2.    The Class Notices Satisfy Rule 23 and Due Process

Rule 23(e) requires the Court to "direct notice in a reasonable manner to all class members who would be bound" by the settlement.  *Bailey v. White*, 320 Fed. Appx. 364, 2009

WL 928595 (6th Cir. 2009).   The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *UAW v. General Motors Corp.,* 497 F.3d 615, 626 (citing *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)).

Reasonable notice to class members is required by due process as well.  *Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008) (citing *DeJulius v. New England Health Care Employees Pension Fund,* 429 F.3d 935, 943-44 (10th Cir.2005) (citing *Mullane,* 339 U.S. at 313; *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 173 (1974).  Due process "does not, however, require *actual* notice to each party intended to be bound by the adjudication of a representative action.  *Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008) (emphasis by the court) (citing *DeJulius,* 429 F.3d at 944 (citing *Mullane,* 339 U.S. at 313-14); *In re Integra Realty Res., Inc.,* 262 F.3d 1089, 1110-11 (10th Cir. 2001); *Silber v. Mabon,* 18 F.3d 1449, 1453-54 (9th Cir.1994))).  The issue is not whether all class members received notice, "but whether the class as a whole had notice adequate to flush out whatever objections might reasonably be raised to the settlement." *Fidel*, 534 F.3d at 514 (quoting *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1375 (9th Cir.1993)).

The "individual notice" requirement of Rule 23 and due process is fulfilled by sending written notice to class members by first-class mail, at the addresses shown in the defendant's business records.  *Grunin v. International House of Pancakes* (8th Cir. 1975), 513 F.2d 114, 120, *cert. denied* (1975), 423 U.S. 864 (1975) (citing *Eisen*, 417 U.S. at 172-77).  The Eighth Circuit noted that, in *Eisen*, "the Supreme Court specifically held that individualized notice by mail to the last known address was the 'best notice practicable' in a class action."  *Grunin*, 513 F.2d at 121.

In the present case, the proposed Class Notice satisfies these requirements.  Under the terms of the Settlement Agreement and the proposed Preliminary Order, the Notices will be sent to the members of the class by first-class mail using the addresses shown in Defendant's records.

### B.     Approval of the Settlement Under Rule 23(e) Is Warranted

Under Rule 23(e), a class settlement must be "fair, reasonable, and adequate" under a seven-factor standard discussed below.  *UAW v. General Motors Corp.,* 497 F.3d 615, 626 (citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir.1983)).

The Sixth Circuit has recognized that "the law generally favors and encourages the settlement of class actions."  *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). Such actions, by their nature, involve uncertainties of outcome, difficulties of proof, and lengthy litigation, and lend themselves readily to compromise.  4 Newberg On Class Actions § 11.41 (4th ed. 2007) (citing cases).  Therefore, when considering the below factors, the courts apply a "strong presumption" in favor of finding a settlement to be fair.  *Dail v. George A. Arab, Inc.,* 391 F. Supp. 2d 1142, 1145-46 (M.D. Fla. 2005) (citing *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977)).  *Accord, Sweet v. General Tire & Rubber Co.*, 1982 WL 278, *5 (N.D. Ohio Mar. 17, 1982).

### 1.     The Seven-Factor Standard Is Satisfied

The Sixth Circuit uses seven factors to evaluate class action settlements:

(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich,* 720 F.2d 909, 922-23

9

(6th Cir.1983)), *quoted in Crawford*, 2008 WL 4724499 at *3. Unlike Rule 23 class certification for purposes of litigation, certification of a Rule 23 class solely for the purposes of settlement does not require the court to engage in an analysis of manageability. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, syl. 2(b), 620 (1997)("whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested, for the proposal is that there be no trial.").[1] As shown below and in the Lazzaro and DeVito Declarations (*see* Exhibits 2 and 3), the seven-factor standard supports approval of the Settlement.

### a)      No Indicia of Fraud or Collusion Exists

The Parties' counsel each have extensive experience litigating FLSA claims, including claims for unpaid hours worked.  A Settlement Agreement was achieved only after arms-length and good faith negotiations between the Parties.  As such, there is no indicia of fraud or collusion.

### b)      The Complexity, Expense and Likely Duration of Continued Litigation Favor Approval

The policy favoring the settlement of class actions and other complex cases applies with particular force here.  Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming.  Moreover, the Parties continue to disagree over the merits of Plaintiffs' claims.  Defendant maintained that rounded time during the 12-minute grace periods for punching in and out at the start and end of the shift was not compensable when employees did not perform work during these times, and many Class Members did not begin performing any compensable work activities until after the scheduled start of their shifts, especially during the

---

[1] While Plaintiff and Defendant agree that all requirements are met for certification of a Rule 23 class for settlement purposes only, Defendant reserves all of its rights to challenge (and believes it would have good grounds to challenge) class and collective certification under Rule 23 and the Fair Labor Standards Act if litigation continues in this matter.

morning grace period.  In addition, the Parties disagreed whether the two-year limitations period for non-willful violations or three-year limitations period for willful violations applied. Defendant claims that even if Plaintiffs succeed on the merits, Plaintiffs cannot not prove a willful violation of the law, and thus, no wages would be owed for the 3rd year of the three-year limitations period.

If forced to litigate this case further, the Parties would certainly engage in complex, costly, and protracted wrangling.  The Settlement, on the other hand, provides substantial relief to Representative Plaintiff and the Class Members promptly and efficiently, and amplifies the benefits of that relief through the economies of class resolution.

### c)     *Investigation Was Sufficient to Allow the Parties to Act Intelligently*

The Parties engaged in substantial investigation prior to negotiating the Settlement Agreement.  Prior to filing the Action, Plaintiffs' Counsel performed a significant amount of research and factual investigation of the claims to set forth a factually specific and accurate complaint for the Court and Defendant.  After filing the Action, relevant information was exchanged, including a complete analysis of each Class Member's overtime damages resulting from Defendant's Time and Attendance/Kronos Guidelines policy during the Calculation Period, each version of Defendant's Time and Attendance/Kronos Guidelines policy going back to 1991, and various agreements between Defendant and Kronos Incorporated.  In addition, Plaintiffs' Counsel engaged in a further independent investigation of the facts, obtained investigation notes from Representative Plaintiff and numerous other employees who are members of the proposed settlement class, gathered a number of declarations from employees in the proposed settlement class, and retrieved email communications that supported Plaintiffs' claims.  Thus, the legal

11

issues in the case were thoroughly researched by counsel for the Parties, and all aspects of the dispute are well-understood by both sides.

### d)     The Risks of Litigation Favor Approval

Counsel for both sides believe in the merits of their clients' positions, but nonetheless recognize that the litigation of claims is uncertain in terms of duration, cost, and result. Moreover, in the present case, Defendant raises affirmative defenses to Plaintiffs' claims, and the outcome of those defenses is uncertain as well.  Continued litigation would be risky for all.

### e)     Uncertainty of Recovery Supports Approval

Plaintiffs' range of possible recovery is also open to dispute.  Even if Plaintiffs succeed on the merits of their claims, the amount of recovery is uncertain and something upon which the Parties continue to disagree.

### f)     Experienced Counsel's Views Favor Approval

The Parties' counsel are experienced in wage-and-hour class actions and complex business litigation, have acted in good faith, and have represented their clients' best interests in reaching the Settlement Agreement.  Counsel support the Settlement Agreement as fair and reasonable, and in the best interest of the Class as a whole, as described in the Lazzaro and DeVito Declarations (*see* Exhibits 2 and 3).

### 2.     The Settlement Distributions Are Fair, Reasonable, and Adequate

As a part of the scrutiny it applies to a FLSA collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable."  *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499 (E.D. Ky. Oct. 23, 2008) (citing *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 855 (1999).  In the present case, the Settlement Agreement provides that Defendant's Settlement Payment, after deduction of the Service Award to

12

Representative Plaintiff, attorneys' fees, and litigation reimbursements to Plaintiffs' Counsel, will be divided into Individual Payments for which participants in the settlement will be eligible. All components of the proposed distribution are proper and reasonable, and the settlement as a whole is fair, reasonable and adequate for Representative Plaintiff and the Class Members.

### a)   The Individual Payments Are Reasonable and Adequate

All Individual Payments will be calculated proportionally on each Class Member's overtime damages resulting from Defendant's Time and Attendance/Kronos Guidelines policy during the Calculation Period.  The Calculation Period for Representative Plaintiff and the Class shall mean the period between January 1, 2011 and March 3, 2014, the date on which the City of Cleveland eliminated its Time and Attendance/Kronos Guidelines policy.

If approved by the Court, the Proposed Settlement will provide substantial payments to Representative Plaintiff and the Class Members for unpaid overtime compensation.   Under Plaintiff's theory of the case, during the two-year limitations period for non-willful violations (January 1, 2012 through March 3, 2014), Representative Plaintiff and the Class Members were, denied $1,773,731.00 in overtime compensation and regular wages.  Under Plaintiff's theory, during the three-year limitations period for willful violations (January 1, 2011 through March 3, 2014) Representative Plaintiff and the Class Members were denied $2,606,495.00 in overtime compensation and regular wages.  These figures capture damages due on all time that was rounded against employees.

Under Defendant's grace period theory, Representative Plaintiff and the Class Members were denied, if anything, $443,784.00 in overtime during the two-year limitations period, and $647,437.00 in overtime during the three-year limitations period.  The parties vigorously disputed each other's theory of the case, and the willfulness of the violation.  The recovery in

13

this settlement properly accounts for the risks and uncertainties in establishing all the claims and defenses under these diverging theories as well as the willfulness of any violation.

As such, the Proposed Settlement recovers, under Plaintiff's theory more than full relief for lost overtime during the two-year look back period. Under Defendant's theory, the Proposed Settlement recovers well in excess of the potential, recoverable damages. Moreover, as a result of the policy change on March 3, 2014, Representative Plaintiff and the Class Members are receiving the benefit of being paid for at the time they work going forward.

Prior to the Fairness Hearing, the Individual Payments to Representative Plaintiff and the Class Members will be calculated, and a Proposed Schedule of Individual Payments will be submitted to the Court for approval.

### b)  Representative Plaintiff's Service Award Is Proper and Reasonable

Service awards to a representative plaintiff recognizing the value of his or her services on behalf of other participants are proper. As stated in *In re Dunn & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366 (S.D. Ohio 1990):

> Numerous courts have not hesitated to grant incentive awards to representative plaintiffs who have been able to effect substantial relief for classes they represent.

130 F.R.D. at 373 (citing *Wolfson v. Riley*, 94 F.R.D. 243 (N.D. Ohio 1981); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985); *In re Minolta Camera Products Antitrust Litigation*, 666 F. Supp. 750, 752 (D. Md. 1987)).

In this Circuit, service awards to representative plaintiffs are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing the case and advising counsel in

14

prosecution of case." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273, 276 (S.D. Ohio 1997).

The courts recognize that "differentiation among class representatives based upon the role each played may be proper in given circumstances." *Dun & Bradstreet*, 130 F.R.D. at 374 (citing *In re Jackson Lockdown/MCO Cases*, 107 F.R.D. 703, 710 (E.D. Mich. 1985)). *See also Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (among the factors warranting incentive awards are the "time and effort spent" by the individuals in question and "whether these actions resulted in a substantial benefit to Class Members").

In the present case, the Lazzaro and DeVito Declarations (*see* Exhibits 2 and 3) establish that the proposed Service Award is proper and reasonable. Representative Plaintiff Cheryl Armbruster's services were extensive and effective. In addition to discovering the rounding claim and reporting it to Plaintiffs' Counsel, she provided extensive factual information to Plaintiffs' Counsel, faithfully attended meetings with Plaintiffs' Counsel, and attended the two mediation conferences with the Magistrate Judge. Moreover, she subjected herself to the responsibilities of serving as a named plaintiff in a lawsuit against her current employer.

c) ***The Attorneys Fees and Expenses to Plaintiffs' Counsel Are Proper and Reasonable***

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). The OMFWSA, which is interpreted in accordance with the

FLSA,[2] also provides that the defendant is liable for "costs and reasonable attorney's fees." O.R.C. § 4111.10.

In *Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994), the Sixth Circuit held that the FLSA's mandatory attorneys' fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley,* 19 F.3d at 1134 (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 502 (6th Cir.1984)).

*Fegley* was followed in *Bessey v. Packerland Plainwell, Inc.* 2007 WL 3173972 (W.D. Mich. 2007), in which the district court approved a one-third attorneys' fee in an FLSA settlement very much like the one presented here. Fulfilling *Fegley*'s emphasis on "encourage[ing] the vindication of congressionally identified policies and rights," the *Bessey* court found "the percentage of fund method is the proper method in this case for compensating plaintiffs' counsel. The fact that the damages which could have been claimed by each class member were relatively modest provides a strong reason for adopting the percentage of recovery method, for it rewards counsel for taking on a case which might not otherwise be economically feasible." *Bessey,* 2007 WL 3173972, at *4 (citing *Rawlings v. Prudential Properties, Inc.,* 9 F.3d 513, 516 (6th Cir. 1993) (the district court "must make sure that [class] counsel is fairly compensated for the amount of work done as well as for the results achieved" and "the percentage of the fund method more accurately reflects the results achieved"). *Accord, In re Revco Securities Litigation,* Fed. Sec. L. Rptr. ¶ 96,956, at 94,069 (N.D. Ohio 1993) ("'[t]he

---

[2]*See Douglas v. Argo-Tech Corp.,* 113 F.3d 67, at fn 2 (6th Cir. 1997); *Mitchell v. Abercrombie & Fitch, Co.,* 428 F. Supp. 2d 725, 732 (S.D. Ohio 2006).

percentage of the fund approach… provides a fair and equitable means of determining attorney's fees'" because "'the size of a common fund is an objective yardstick by which the benefit conferred upon the class can be measured'").

In determining the reasonableness of the one-third fee, the *Bessey* court considered the comparative data about Rule 23 class settlements summarized in *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942 (E.D. Tex. 2000), *discussed in Bessey*, 2007 WL 3173972, at *4:

> The most complete analysis of fee awards in class actions conducted to date was conducted by the National Economic Research Associates, an economics consulting firm. The data is reported at Frederick C. Dunbar, Todd S. Foster, Vinita M. Juneja, Denise N. Martin, Recent Trends III: What Explains Settlements in Shareholder Class Actions? (NERA, June 1995) (hereinafter "NERA Study"). <u>This data indicates that regardless of size, attorneys' fees average approximately 32% of the settlement.</u>

*Shaw*, 91 F. Supp. 2d at 988 (citing NERA Study at 7 & Exh. 12) (emphasis added).

The NERA Study relied upon in *Shaw* and *Bessey* showed the average fee to class counsel was approximately one-third of the settlement, while the average result achieved for class members was only 7% to 11% of claimed damages. Measured against that standard, the settlement in the present case is exemplary. Under Plaintiff's theory of the case, during the two-year limitations period for non-willful violations (January 1, 2012 through March 3, 2014), the Class Members were, denied about $1,773,731.00 in overtime compensation and during the three-year limitations period for willful violations (January 1, 2011 through March 3, 2014) Representative Class Members were denied about $2,606,495.00 in overtime compensation and regular wages. Under Defendant's grace period theory, Representative Plaintiff and the Class Members were denied, if anything, about $443,784.00 in overtime during the two-year limitations period, and about $647,437.00 in overtime during the three-year limitations period.

17

As such, the Proposed Settlement recovers, under Plaintiff's theory, more than full relief for lost overtime during the two-year look back period and, under Defendant's theory, well in excess of what the City argues damages to be, before deduction of the Service Award to Representative Plaintiff, attorneys' fees, and litigation reimbursements to Plaintiffs' Counsel. Moreover, as a result of the policy change on March 3, 2014, Representative Plaintiff and the Class Members are receiving the benefit of being paid for all the time they work.  Therefore, the attorneys' fees requested are reasonable in light of the exceptional benefit achieved for Plaintiff and the Class.

The attorneys' fees requested by Plaintiffs' Counsel should not be altered because counsel efficiently resolved this case early on rather than prolonging the litigation and increasing his potential fees.  As the Manual for Complex Litigation recognizes, "one purpose of the percentage method is to encourage early settlements by not penalizing efficient counsel, thus ensuring competent counsel continue to be willing to undertake risky, complex, and novel litigation." Manual for Complex Litigation (4th) § 14.121.

Had this case not settled, Plaintiffs' Counsel would have vigorously litigated the case without any promise of success and compensation.  At every step of the litigation, Defendant could have succeeded.  Therefore, the Class Members were at great risk for non-payment.  This risk of non-payment strongly supports the amount requested here and warrants notice to the class of Plaintiffs' attorneys' fee request.  Prior to the Fairness Hearing, Plaintiffs' Counsel will submit supplemental information regarding the reasonableness of the fee request.

A statement of expenses will also be submitted by Class Counsel prior to the Fairness Hearing.  Expenses are currently estimated to be in the range of $2,000.00 to $4,000.00.  All such expenses were incurred in the course of this action for the purpose of preserving, proving, and presenting the claims of Representative Plaintiff and the Class Members.

18

On the basis of these factors, as well as all of the other factors discussed above, the Court should conclude that the Settlement is fair, reasonable, and adequate, and grant preliminary and later final approval under Rule 23(e).

## IV.  <u>CONCLUSION</u>

Representative Plaintiff requests that the Court grant preliminary approval of the Settlement, designate Representative Plaintiff as Class Representative, preliminarily approve Class Representative's request for a Service Award, designate Plaintiffs' Counsel as Class Counsel, preliminarily approve Class Counsel's request for attorneys' fees, and direct distribution of notice to the Class by entering the proposed Preliminary Order attached to the Settlement Agreement as Exhibit C.

Respectfully submitted,

/s/ Anthony J. Lazzaro
Anthony J. Lazzaro (0077962)
anthony@lazzarolawfirm.com
Sonia M. Gassan (0088684)
sonia@lazzarolawfirm.com
The Lazzaro Law Firm, LLC
920 Rockefeller Building
614 W. Superior Avenue
Cleveland, Ohio 44113
Telephone: 216-696-5000
Facsimile: 216-696-7005


Christopher M. DeVito (0047118)
devitolaw@yahoo.com
Morganstern, MacAdams & DeVito Co., L.P.A.
623 West Saint Clair Avenue
Cleveland, Ohio 44113
Telephone: 216-687-1212
Facsimile: 216-621-2951


Attorneys for Plaintiffs
Cheryl Armbruster and the Class

/s/ Robert M. Wolff
Robert M. Wolff (0006845)
rwolff@littler.com
Inna Shelley (0085719)
ishelley@littler.com
LITTLER MENDELSON, P.C.
1100 Superior Avenue, 20th Floor
Cleveland, OH  44114
Telephone: 216-696-7600
Facsimile: 216-696-2038

Attorneys for Defendant
City of Cleveland

## CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2014, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's system.

 /s/ Anthony J. Lazzaro

Attorney for Plaintiffs